IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**FREDDIE LEE EZEKIEL**                                                                              **PLAINTIFF**
**ADC #127401**

v.                                    No: 1:19-cv-00023 JM-PSH

**JEREMY ALMAN,** *et al.*                                                                       **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Freddie Lee Ezekiel, an inmate at the Arkansas Department of Correction's (ADC) Tucker Unit, filed this *pro se* civil rights complaint against Sergeant Jeremy Alman and Corporal Delgado (the "ADC Defendants") as well as nurse Michelle A. Hussung. Doc. No. 2. Ezekiel subsequently filed an amended

complaint alleging that Alman used excessive force when he handcuffed Ezekiel on November 2, 2018, and that Delgado refused to provide him with a diet meal tray on the same day while Ezekiel was in isolation at the North Central Unit. *Id.* at 4-5. Ezekiel also alleged that Hussung refused to provide him with medical treatment after he was handcuffed. *Id.* at 5. Ezekiel's claims against defendants Alman and Delgado were previously dismissed for failure to exhaust available administrative remedies. *See* Doc. Nos. 39 & 42.

Defendant Hussung filed a motion for summary judgment, a brief in support, and a statement of facts claiming that Ezekiel did not exhaust his claims against her before he filed this lawsuit (Doc. Nos. 43-45). Despite the Court's order notifying Ezekiel of his opportunity to file a response and statement of disputed facts, Ezekiel did not do so. Doc. No. 48. Because Ezekiel failed to controvert the facts set forth in defendant's statements of undisputed facts, Doc. No. 45, those facts are deemed admitted. *See* Local Rule 56.1(c). The defendant's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that defendant Hussung is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude

summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Hussung argues that she is entitled to summary judgment because Ezekiel failed to exhaust his administrative remedies with respect to her before he filed this lawsuit. In support of her motion, Hussung relies on documents submitted by defendants Alman and Delgado: the ADC's grievance policy (Doc. No. 13-1); a declaration by Terri Grigsby, the ADC's Grievance Supervisor (Doc. No. 13-2); a declaration by Shelly Byers, the ADC's Assistant Medical Services Administrator (Doc. No. 13-3); and a copy of Ezekiel's inmate grievance record (Doc. No. 13-4). *See* Doc. No. 43. Hussung also relies on the findings previously made by this Court in its Proposed Findings and Partial Recommendation entered on August 14, 2019 (Doc. No. 39) (the "Recommendation").

The PLRA requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. The PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does

not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy (AD 14-16), inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. Doc. No. 13-1 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form ("Step One") within 15 days after the occurrence of the incident. *Id.* at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id.* at 4. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at 5-6. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id.* This process should not take more than three working days. *Id.* at 6-7. If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance ("Step Two"). *Id.* at 8. The inmate may also proceed to Step Two if he does not receive a response from the problem solver within three working days; in that case, the inmate has an

additional three working days to proceed to Step Two. *Id.* at 7-8. If the inmate receives no response to his Step Two grievance, or if the inmate is not satisfied with the response, the inmate can appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *Id.* at 10-11. A written decision or rejection of an appeal is the end of the grievance process. *Id.* at 12. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 13. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 17.

In the Recommendation, the undersigned reviewed the evidence submitted by defendants Alman, Delgado, and Ezekiel, and found that Ezekiel had provided no proof that he filed a grievance between November 2, 2018 (the date of the incident in question) and March 27, 2019 (the date he filed this lawsuit). Doc. No. 39 at 6. The Court's Recommendation was subsequently adopted. Doc. No. 42. Shelly Byers, the ADC's Assistant Medical Services Administrator, submitted a declaration stating that she reviewed Ezekiel's medical grievance history for the relevant time period and did not find a single medical grievance submitted by Ezekiel. Doc. No. 13-3 at 3. Ezekiel's inmate grievance record also identifies no grievances submitted by him. Doc. No. 13-4. In response to that evidence, Ezekiel came forward with no

6

proof that he had exhausted a grievance related to the issues in his complaint.  *See* Doc. No. 39 at 5-6.  Accordingly, there is no evidence that Ezekiel filed or exhausted any grievance regarding his allegation that Hussung refused to provide him with medical treatment after he was handcuffed on November 2, 2018.  His claims against Hussung should be dismissed for failure to exhaust available administrative remedies.

### IV.  Conclusion

Because Ezekiel did not exhaust his administrative remedies with respect to his claims against Hussung, Hussung's motion for summary judgment (Doc. No. 43) should be granted, and Ezekiel's claims against Hussung should be dismissed without prejudice.

DATED this 28th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE